Weygandt, C. J.
 

 Had the reversal by the Court of Appeals been based on the sole ground that the judgment was against the weight of the evidence, that court would have been without authority to render final judgment but would have been required to remand the case to the Court of Common Pleas for retrial. However, the Court of Appeals held also that the judgment was contrary to law in that the record discloses
 
 no
 
 evidence tending to show the plaintiff’s employment by the Ohio Farmers Insurance Company. Hence, if this court should find the Court of Appeals in error in this latter respect,.it will be necessary to remand the case for retrial, inasmuch as this court is not required to reweigh the evidence.
 

 Does the record disclose evidence tending to show that the plaintiff was employed by the Ohio Farmers
 
 *143
 
 Insurance Company in the work of repairing the house?
 

 Part of the evidence is conflicting, but some .of it is not. It appears that Stewart, the owner of the property, had purchased the insurance policy through E. H. Stout, an employee of the John Wood Insurance Agency of the Ohio Farmers Insurance Company. The day after the tree had been blown against his house, Stewart informed Stout of' the loss and asked him to come and see it. Stout did so within two or three hours. The plaintiff testified in part as follows:
 

 “39. All right, go ahead. A. And Mr. Stout looked around over the property and he told us to go ahead and clean the place up, fix it back like it was before the storm and that is all there was to it. There was nothing said about what he was going to give us. We just went ahead and fixed the place back like it was before the storm. * .* *
 

 “41. Do you recall what Mr. Stout did at the time that he was there? You said that he looked around the property but I wish you would amplify that. Tell us a little bit more what he did while he was there. * *
 
 *
 
 A. Well, he told us to get a set of blocks and try to keep the tree from damaging the house any more than it had already damaged it and there was an electric wire that the tree had fell down across and he told us to be careful about that wire, not to let the tree get on that wire so it would set fire to the house.
 
 *
 
 * *
 

 “44. Now, Mr. Gardner, who was it that told you and these other men that were with you to go ahead and do this work? * * * A. .Mr. Stout. * * *.
 

 “50'. Now, tell us, Mr. Gardner, what instructions if any Mr. Stout gave to you whemyou were there with him previous to beginning this work? * * * A. Why he just said to go ahead and clean the place up • and told us to put these blocks on this limb to keep.it.
 
 *144
 
 off the building and clean‘the place all back up just like it was before the storm.
 

 “51. Now, what if any instructions did Mr. Stewart give you previous to beginning this work? * * * A. I say Mr. Stewart never gave us any instruction.”
 

 Another witness, Newton Huron, testified as follows:
 

 “14. All right, what was done when you five were there? * * * A. Well, he hired them boys and then turned around and hired me to do the brick work. * * *
 

 “25. Well, tell us then what 'conversation there was relative to you doing’this brick work on Mr. Stewart’s house, who, you had the conversation with and what took place there ? * * * A. Well, I was down there and he had somebody to do the work and asked if I would do it for— ,
 

 “26. Who did? A. Stout.”
 

 Stewart, the owner of the property, testified as follows :
 

 “16. Now, will you continue, Mr. Stewart, with just what discussion there was had relative to hiring these men to remove the tree and repair the damage? * * * A. Mr. Stout suggested to protect the- house and keep it from caving in. Now, this limb was nearly half an elm tree and he suggested to hook a block and tackle to the top limb on the house and hook it to a big limb and draw it tight to protect it caving into the side of the house, which was done. I don’t know. When I came back it was all cleared off. * * *
 

 “24. ’ Now, you were the owner of the property, Mr. Stewart. Did you make any stipulation as to the time it was to be done, as to how it was to be done and when it was to be done? A. No, sir.”
 

 • The action of Stout was consistent with the following provision of the policy:
 

 “It shall be optional, however, with this company ■*. * * to repair, rebuild, or replace the property lost
 
 *145
 
 or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do.” .
 

 Thus, Stewart would have violated the terms of his policy if he had refused to permit the representative of the company to take charge. Especially was this true when further loss was imminent. Had the tree been permitted to remain against the house, more of the structure might have been crushed by the continuous pressure. Then, too, there was the further and greater danger of fire if the limb should fall across the adjacent electric wires. The action of Stout was a distinct benefit to the company in the conduct of its business of insuring and also repairing property whe.n it elected so to do. Furthermore, the company paid for the work for which Stout is said to have contracted— a fact which at least permits the inference of approval, although the check was made payable to Stewart who in turn paid the money to the workmen except the plaintiff who declined to accept it under that circumstance.
 

 This court is of the opinion that the record cannot be said to contain no evidence tending to show employment of the plaintiff by the insurance company in the conduct of its business. Hence, it was error for the Court of Appeals to render a final judgment in favor of the defendant; and since that court found the judgment of the Court of Common Pleas to be against the weight of the evidence, the case is remanded to the latter court for a new trial.
 

 Judgment reversed.
 

 Turner, Zimmerman and Sohngen, JJ., concur.
 

 Matthias, Hart and Stewart, JJ., dissent.